UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JORDAN PATRICK SCHWARTZ,
                    Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

                    Defendant.

No. CV-13-45-JTR

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF No. 15, 19.  Attorney David L. Lybbert represents Jordan P. Schwartz (Plaintiff); Special Assistant United States Attorney Gerald J. Hill represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

On August 27, 2009, Plaintiff filed an application for Social Security Supplemental Income, alleging disability beginning May 1, 2008.  Tr. 20; 128.  Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ).  Tr. 20; 80-111.   A hearing was held on October 18, 2011.  Tr. 41.  At the hearing, medical expert Ellen Rozenfeld, Ed.M., Psy.D., vocational expert Diane Kramer, and Plaintiff, who was represented by counsel, appeared and testified.  Tr.41-79.  ALJ Marie Palachuk presided.  Tr. 41.  The ALJ denied benefits on November 23, 2011.  Tr. 20-31.  The Appeals Council denied review.  Tr. 1-3.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 24 years old, and living in his parents' home.  Tr. 52; 67.  He had attended four years of high school, but had not earned enough credits to graduate.    Tr. 52-53.  Subsequently, Plaintiff unsuccessfully attempted to earn a GED.  Tr. 53.

Plaintiff has worked brief, part-time jobs at restaurants, a tire store, a cherry picking company, and at a Target store.  Tr. 54-63.  Recently, Plaintiff volunteered at the Humane Society and was ultimately offered a full-time position, but he declined because he was convinced his anxiety would prevent him from being able to sustain full-time work.  Tr. 61-62.   Plaintiff explained that when he worked as a volunteer, he was not anxious because he knew he could decline to do a task, and he knew he did not have to return the next day to work a full day.  Tr. 62-63.  He testified that while volunteering at the Humane Society, at times his anxiety symptoms required him to abruptly leave:

> A lot of times it was when they needed help with doing bigger stuff, not just – because I would go there and maybe wash a dog, you know, feed them, clean out kennels and stuff like that – other stuff.  And then they'd ask me to do other stuff, and I would come up with – at this point, now I can look back – dumb excuses to why I had to leave.  And I would tell them, and they'd be, like, all right, well come back when you can.  And I'd leave and maybe come back a couple days later.

Tr. 63.

Plaintiff said that when he works at a full-time job, he experiences anxiety every day.  Tr. 54.  He said during his last attempt at full-time work, every morning anxiety would "take over," he was unable to "think right," and he could not leave the house due to several fears.  Tr. 55.   Once at work, he constantly worried about making mistakes, so much that he was unable to remember the

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

procedures he was supposed to follow.  Tr. 55-57.  Plaintiff explained that when confronted with a new situation, such as meeting a new person, he typically experiences a panic attack.  Tr. 66.  He said his depression symptoms kept him from leaving his house, made him avoid interaction with people and neglect personal hygiene.  Tr. 66-67.

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

(9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ADMINISTRATIVE DECISION

At step one, ALJ Palachuk found that Plaintiff had not engaged in substantial gainful activity since August 27, 2009. Tr. 22. At step two, she found Plaintiff had the severe impairments of attention deficit hyperactivity disorder, math learning disorder, adjustment disorder, and general anxiety disorder. Tr. 22.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).    Tr. 23.    The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels.    Tr. 25.    However, the ALJ noted Plaintiff has additional mental limitations:

> [C]laimant has the ability to perform simple, routine, and repetitive tasks involving up to three step commands.  However, the claimant would be limited from none to minimal contact with the general public.  The claimant would also be limited to only superficial contact with coworkers, and would essentially be isolated with only occasional supervision and should not be in close physical proximity to coworkers.  The claimant would further require additional time to adapt to changes in the work setting or work routine, and would work best in a predictable/routine environment with little change.  The claimant is also able to sustain attention and concentration for the 2 hour intervals generally required between regularly scheduled breaks.

Tr. 25.  At step four, the ALJ found that Plaintiff could perform past relevant work as animal attendant, cherry packer, and dishwasher/kitchen helper.    Tr. 29. Additionally, the ALJ concluded that, based upon the vocational expert's testimony, and notwithstanding Plaintiff's limitations, and considering his age, education, work experience, and residual functional capacity, he is able to perform the representative occupations such as laundry worker II, industrial cleaner, and production assembler.  Tr. 31.  The ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.  Tr. 31.

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends that the ALJ erred by (1) improperly rejecting

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

medical opinions; (2) determining Plaintiff had little credibility; (3) improperly rejecting lay witness testimony; (4) failing to conduct an adequate step four analysis; and (5) failing to identify specific jobs that Plaintiff could perform. ECF No. 15 at 12.

## DISCUSSION

### A.    Medical Opinions

Plaintiff contends that the ALJ improperly weighed the opinions from both Dr. Rowe and Dr. Weick.  ECF No. 15 at 14-19.  The court agrees.  In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians.  *Id.*  Similarly, an examining physician's opinion generally must be given greater weight than that of a non-examining physician.  *Lester*, 81 F.3d at 830.

An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and "specific and legitimate" reasons supported by substantial evidence in the record, for rejecting a contradicted opinion of an examining physician.  *Lester*, 81 F.3d at 830-31.  In other words, an ALJ may reject the opinion of an examining physician, if contradicted by a non-examining physician, by providing "specific and legitimate reasons that are supported by substantial evidence in the record."  *Moore v. Comm'r of the Soc. Sec. Admin*, 278 F.3d 920, 924 (9th Cir. 2002), citing *Lester,* 81 F.3d at 830-31.

### 1.    Thomas Rowe, Ph.D.

Dr. Rowe examined Plaintiff in September 2007, and again four years later in October 2011.  Tr. 193-99; 346-58.  During the 2011 testing, Plaintiff's MMPI-2

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

test results were of "questionable validity." Tr. 352. Dr. Rowe stated that a significant probability existed that Plaintiff "endorsed items inaccurately by overreporting psychopathology." Tr. 352. He explained that people with similar validity scores are possibly experiencing severe distress but lack either the interpersonal skills or the ability to alter their situation. Tr. 352.

Dr. Rowe also completed a 2011 Mental Medical Source Statement form, and he assessed Plaintiff with three marked limitations in the ability to: (1) maintain attention and concentration for extended periods; (2) complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) interact appropriately with the general public. Tr. 356. Dr. Rowe also assessed Plaintiff with nine moderate limitations, including his ability to make simple work-related decisions, ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors. Tr. 356-57.

The ALJ's analysis related to the weight given to Dr. Rowe's 2011 assessment consisted of a single sentence: "However, the undersigned gives little weight to Dr. Rowe's opinion with regard to the second evaluation because his opinion is inconsistent with the objective evidence, Dr. Rozenfeld's opinion, and the claimant's self-reported activities, which indicate that the claimant does not have more than moderate limitations." Tr. 28.

The ALJ's reasons for rejecting Dr. Rowe's opinion are neither "specific and legitimate," nor supported by the record, and thus rejection of Dr. Rowe's 2011 evaluation was improper. See *Lester*, 81 F.3d at 830-31.

First, it is insufficient for an ALJ to reject the opinion of an examining physician by merely stating, without more, that the opinion is inconsistent with other evidence in the record. See *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988). Inconsistency between doctors' opinions does not allow the ALJ to simply

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

1   select one opinion based solely on the fact that an inconsistency exists, but instead
2   the ALJ must address, explain and resolve the conflicting evidence by assigning
3   weight to differing opinions based on cogent, specific, and legitimate reasons.
4   *Morgan,* 169 F.3d at 603; *Reddick v. Chater*, 157 F.3d 715, 722, 725 (9th Cir.
5   1998).   The ALJ failed to provide any analysis related to the "inconsistent"
6   objective evidence.

7       Next, the ALJ improperly rejected Dr. Rowe's opinion based upon
8   contradictory opinions from a non-examining physician who testified at the
9   hearing.  "The contrary opinion of a non-examining medical expert does not alone
10  constitute a specific, legitimate reason for rejecting a treating or examining
11  physician's opinion." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001),
12  citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989); *see also Pitzer v.*
13  *Sullivan,* 908 F.2d 502, 506 n.4 (9th Cir. 199) ("The nonexamining physicians'
14  conclusion, with nothing more, does not constitute substantial evidence,
15  particularly in view of the conflicting observations, opinions, and conclusions of an
16  examining physician.").   In this case, the fact that Dr. Rowe's opinion was
17  contradicted by the testimony from Dr. Rozenfeld, a non-examining physician,
18  does not constitute a specific and legitimate reason to reject Dr. Rowe's opinion.
19  In the absence of other valid reasons for rejecting Dr. Rowe's opinion, the ALJ
20  improperly rejected Dr. Rowe's opinion based upon the opinions from Dr.
21  Rozenfeld.

22      Finally, the ALJ rejected Dr. Rowe's opinion of Plaintiff's limitations
23  because the limitations were contradicted by claimant's self-reported activities.
24  Daily activities inconsistent with a doctor's opinions of limitations are a valid
25  reason to discount a physician's opinion.  *Stubbs-Danielson v. Astrue*, 539 F.3d
26  1169, 1175 (9th Cir. 2008).   However, when providing reasons for rejecting
27  opinion evidence, the ALJ should provide "a detailed and thorough summary of the
28  facts and conflicting clinical evidence, stating his interpretation thereof, and

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

making findings." *Reddick*, 157 F.3d at 725.   The ALJ failed to identify Plaintiff's activities that contradict Dr. Rowe's assessment and, thus, the court is unable to find that Plaintiff's daily activities constitute a specific and legitimate reason to reject Dr. Rowe's opinion.

The ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Dr. Rowe.   In the absence of valid reasons, the ALJ's rejection of this opinion was error.

### 2.   Mark Weick, M.Ed.

The record reveals Mark Weick, M.Ed., treated Plaintiff regularly beginning in September 2009.   Tr. 259-343.   Mr. Weick wrote a letter dated August 8, 2011, indicating that Plaintiff had "made significant progress," but he continues to be, at times, "severely impaired by anxiety and depression (including suicidal ideation and despair), and [he] has difficulties in social relationships and communication." Tr. 344.   Mr. Weick recommended Plaintiff "be approved for disability at this time, pending hoped for outcomes of employability, amelioration of paralyzing anxiety and depression, and effective social skills." Tr. 344.

The ALJ gave little weight to Dr. Weick's opinion for three reasons: (1) because he "did not provide any actual limitations or basis for his opinion, which was only a conclusion of disability"; (2) his conclusion was inconsistent with his own chart notes that indicated instances of Plaintiff reporting he was "doing well" and his "functioning improved"; and (3) because "determinations of disability are reserved to the Commissioner, and not treating sources." Tr. 28.

The ALJ's first reason for rejecting Mr. Weick's opinion is contradicted by the August 8, 2011, letter.   Tr. 344.   Contrary to the ALJ's assertion, the basis for Mr. Weick's opinion is provided within the letter and the accompanying treatment notes.   The letter identifies Plaintiff's diagnoses (i.e., "paralyzing anxiety and depression"), describes how his impairments manifest in symptoms ("difficulties in social relationships and communication"; "suicidal ideation and despair") and

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

indicates Mr. Weick's opinion that Plaintiff cannot sustain employment.  Tr. 344.  The ALJ's assertion that the letter was merely a conclusion ignores the content of the letter, as well as the accompanying treatment notes and, thus, does not constitute a "specific and legitimate" reason to reject the opinion.

Next, the ALJ reasons that Mr. Weick's opinion is entitled to little weight because his chart notes indicate instances where Plaintiff is "doing well," and his functioning improved.  Tr. 28.  When analyzing mental impairments, an ALJ must read individual chart notes "in context of the overall diagnostic picture."  *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001).  "[The fact that] a person who suffers from . . . anxiety[] and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."  *Id.*  Moreover, "[a] single current examination may not always properly describe an individual's sustained ability to function.  It should be viewed as one point in time in the longitudinal picture of an individual impairment."  *DeLorme v. Sullivan*, 924 F.2d 841, 851 (9th Cir. 1991), quoting SSR 83-15.

Also, in evaluating whether the claimant satisfies the disability criteria, the ALJ must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a) .  "Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability."  *Lester,* 81 F.3d at 833.  That a person who suffers from severe panic attacks, anxiety, and depression "makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."  *Holohan*, 246 F.3d at 1205, citing *Kellough v. Heckler*, 785 F.2d 1147, 1153 (4th Cir. 1986) ("'Feels well' and 'normal activity' must be read in context).  The ALJ's reliance upon isolated instances when the Plaintiff indicated some improvement in functioning is misplaced.  Considered as a whole, the medical records indicate Plaintiff's anxiety and depression symptoms wax and wane, and the record does not support the ALJ's conclusion that Dr. Weick's opinion is contradicted by his treatment records.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

Finally, the ALJ rejected Mr. Weick's opinion because the "determinations of disability are reserved to the Commissioner, and not treating sources."  Tr. 28.  In disability benefits cases, medical providers may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work. *Reddick*, 157 F.3d at 725.  While an ALJ is not bound by the uncontroverted opinions of the claimant's medical providers on the ultimate issue of disability, the ALJ cannot reject the opinions without providing clear and convincing reasons. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  As a result, the ALJ may not reject Mr. Weick's opinion simply because the determination of disability belongs to the ALJ.  In sum, none of the ALJ's reasons for rejecting Mr. Weick's opinion is "specific and legitimate," and supported by substantial evidence, and thus the ALJ's dismissal of this opinion was error.

**B.    Credibility**

The ALJ found Plaintiff was not credible.  Tr. 26.  Plaintiff contends that the ALJ erred by failing to identify the testimony that was not credible, and by failing to identify the evidence that undermined the testimony.  ECF No. 15 at 19.

The ALJ is responsible for determining credibility. *Andrews*, 53 F.3d at 1039.  Unless affirmative evidence exists indicating that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester,* 81 F.3d at 834.    The ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990).   "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick,* 157 F.3d at 722, quoting *Lester*, 81 F.3d at 834.  If objective medical evidence exists of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

To determine whether the claimant's testimony regarding the severity of the symptoms is credible, the ALJ may consider ordinary techniques of credibility evaluation, such as (1) the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *See, e.g., Fair v. Bowen, 885 F.2d 597, 602-04 (9th Cir. 1989)*; *Bunnell*, 947 F.2d at 346-47.

The reasons cited by the ALJ included Mr. Weick's chart notes indicating an instance of improved functioning, a particular day he reported he was "doing well," and one day he stated that his job "was going well." Tr. 26. Also, the ALJ cited one record where Plaintiff apparently told Mr. Weick that he believed he did not apply himself. Tr. 26; 263.

As stated above, in analyzing mental impairments, the ALJ must read chart notes in context. *Holohan* 246 F.3d at 1205. For the reasons stated above, the ALJ's reliance upon isolated improvements in functioning is misplaced. Plaintiff's experience of episodic improvement in his depression symptoms does not diminish his credibility, but instead reflects the nature of mental impairments. *See, e.g., Taylor v. Comm'r of Soc. Sec*., 659 F.3d 1228, 1234 (9th Cir. 2011) (ALJ erred in holding instances where bi-polar claimant was able to function, when his alleged disability involves attacks that wax and wane).

The ALJ also found significance in the fact that Plaintiff has volunteered for the Humane Society for approximately one year, and was offered a job. Tr. 26. The ALJ heavily relied upon the fact that Plaintiff has been offered and even accepted other jobs as "evidence" that establishes Plaintiff's "anxiety symptoms are not as severe as alleged and that the claimant can retain and maintain employment, especially when considering that the claimant worked for approximately one year at the Humane Society …." Tr. 26-27.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

The ALJ reasoned that because Plaintiff can perform sporadic volunteer work for a few hours at a time, therefore Plaintiff can sustain full time work. This reasoning is flawed. Social Security regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a); *Reddick*, 157 F.3d at 724. The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). The Ninth circuit has noted that "occasional symptom-free periods - and even the sporadic ability to work-are not inconsistent with disability." *Lester*, 81 F.3d at 833.

The ALJ's flawed assumption that permeates the decision is: Because Plaintiff can sustain sporadic volunteer work – work that allows him to choose the date and hours and allows him to change his mind about whether he can stay at work or perform particular tasks – Plaintiff therefore can sustain the demands of regular, full-time employment. The ALJ's assumption, and its inherent flaw, is illustrated in the ALJ's questioning of Plaintiff:

> ALJ: Mr. Schwartz, I also noted that you had been offered a job at the Humane Society and you turned it down. Yet you continued to volunteer there for a number of months. Why did you turn it down?
>
> CLMT: Oh. Once again, my anxiety would kick in. And basically, my mind is telling me that – it's telling me all the bad things you're going to do there. You're going to get fired. You're going to do this. And I told them that I couldn't take the job because of those things. You know, I just – just my anxiety kicked in so much that I turned down the job. But I –

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13

ALJ:  Yet, you were volunteering there for months.  *It's the same thing.  You just weren't getting paid.*

CLMT:  Yeah, see, that's the thing is I never felt the anxiety kick in when I was just a volunteer.  Maybe it's because, maybe, I knew I could leave whenever I wanted, and I could show up whatever [sic] I wanted.  But, you know, we [sic] me working there, I had to be there at a certain time.  And I had to work all day, and then leave at a certain time and then be back the next day.  Volunteering wasn't like that, and that's what I liked about it.

Tr. 61-62 (emphasis added).

The record contradicts the ALJ's assumption that sporadic volunteering requires the same capabilities as full-time, regular, paid work.  Plaintiff's volunteer workday and workweek is dramatically different from a regular job that requires all-day attendance despite panic attacks or "paralyzing anxiety."  While volunteering allows Plaintiff to simply leave when he has an attack, full-time regular employment would eliminate that flexible schedule.  Under these circumstances, the ALJ's reliance upon Plaintiff's ability to volunteer part-time is not a persuasive reason for finding Plaintiff lacked credibility.

Both reasons supporting the ALJ's credibility analysis failed to meet the "clear and convincing" test, and thus the ALJ erred by concluding Plaintiff lacked credibility.

## C.   Lay Witness

Plaintiff contends that the ALJ erred by rejecting the testimony from his father about his inability to sustain employment.  ECF No. 15 at 21-22.  The ALJ must consider statements of "non-medical sources" including spouses, parents, and other relatives in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1513(d)(4); *see also Stout v. Comm'r,* 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to do work.").  As a general rule, "lay

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis and internal citations omitted).  To discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of the witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1999).

Plaintiff's father, Robert Schwartz, testified that Plaintiff has worked with the Department of Social and Health Services for people with disabilities in order to get help in trying to find work.  Tr. 69.  Mr. Schwartz described how Plaintiff struggled with the process to learn job interview skills, and how the program director was concerned that Plaintiff would not be able to find employment due to his anxiety and panic.  Tr. 69.  Mr. Schwartz also described Plaintiff's debilitating panic attacks and related how Plaintiff's panicked behavior when he is employed. Tr. 70-71.

In this case, the ALJ rejected testimony from Plaintiff's father based upon the flawed assumption that Plaintiff simply refused to work full time:

> The undersigned gives little weight to Mr. Schwartz's testimony because the evidence shows that the claimant has been able to retain employment, but has declined said employment.  The evidence also shows that the claimant does have the mental ability and capacity to maintain employment, evidenced by the fact that the claimant worked as a volunteer at the Humane Society for approximately one year.

Tr. 29.

For the reasons explained above, the ALJ's sole reason for rejecting Mr. Schwartz's testimony is not a valid, germane reason.  As such, the ALJ improperly rejected the lay testimony.[1]

---

[1]Plaintiff raised two remaining issues, but in light of this disposition, the court need not address those issues.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 15

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is based on legal error, and requires remand.  On remand, the ALJ is directed to reevaluate the opinions from Dr. Rowe and Mr. Weick, and, if necessary, provide legally sufficient reasons for rejecting these opinions and identify with particularity the evidence supporting the reasons, as well as supply legally sufficient reasons supporting the weight accorded to the other medical source opinions.  Additionally, on remand the ALJ will reconsider Plaintiff's credibility, and provide valid reasons supported by substantial evidence in determining credibility.  Finally, on remand the ALJ will reconsider the lay testimony and provide valid reasons for the weight accorded to that evidence.  The decision is, therefore, **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.  Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 19**, is DENIED.

3.    An application for attorney fees may be filed by separate motion.  The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

DATED December 31, 2013.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 16